IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

| | |
|---|---|
| ELIZABETH DIERKEN, JOSEPH DIAMOND, : | **INDEX NO. 12CV7462(JGK)** |
| VICTORIA SOBEL, BRENNAN CAVANAUGH, : | **ECF CASE** |
| MIRIAM ROCEK, ARMANDO ESPINOZA, : | |
| ROSITA ADAMS, MILO GONZALEZ, LOUIS : | |
| JARGOW and KYLE RUCKER, : | **JURY TRIAL DEMANDED** |
| : | |
| : | |
| Plaintiffs, : | |
| : | **COMPLAINT** |
| - against - : | |
| : | |
| THE CITY OF NEW YORK, a municipal : | |
| entity, NEW YORK CITY POLICE DEPUTY : | |
| INSPECTOR ANTHONY BOLOGNA, NEW : | |
| YORK CITY POLICE OFFICERS  "JOHN : | |
| DOES 1-12", MAYOR MICHAEL R. : | |
| BLOOMBERG, NEW YORK CITY POLICE : | |
| COMMISSIONER RAYMOND W. KELLY : | |
| and NEW YORK CITY POLICE CHIEF : | |
| JOSEPH ESPOSITO, : | |
| | |
| Defendants. | |

-----------------------------------------------------------------------X

Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENANAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS, MILO GONZALEZ, LOUIS JARGOW and KYLE RUCKER, by their attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully allege as follows:

## I. PRELMINARY STATEMENT

**1.** Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENANAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS, MILO GONZALEZ, LOUIS JARGOW and KYLE RUCKER ("Plaintiffs") bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

**2.** On the afternoon of Saturday, September 24th, 2011, Plaintiffs were present in the vicinity of Union Square as participants in and observers of a

march in furtherance of the Occupy Wall Street ("O.W.S.") movement. The O.W.S. movement, *inter alia*, seeks to call attention to and change inequalities and ill effects created through corporate capture of governmental policymaking and enforcement. Plaintiffs as well as approximately eighty other eventual mass arrestees ("mass arrestees") had observed or joined the march in question at various points throughout lower Manhattan prior to the incident complained of herein.

3.    Following Plaintiffs' participation in and observation of the march, the Defendants subjected Plaintiffs to pre-planned, calculated, and illegal "trap-and-arrest" tactics, through which the Defendant "John Doe" POLICE OFFICERS effected mass arrests and detentions of Plaintiffs and mass arrestees by extending orange netting across city blocks and arresting substantially all persons within their nets. The Defendant "John Doe" POLICE OFFICERS effected the arrests and detentions of Plaintiffs despite the absence of individualized probable cause to arrest any one of the named Plaintiffs, and without warning Plaintiffs that their conduct would lead to arrests, and without providing a reasonable opportunity or a viable avenue for Plaintiffs to disperse. Plaintiffs were compliant at all times with the Defendant "John Doe" POLICE OFFICERS' orders and commands, which substantially were given only after Plaintiffs were arrested.

4.    Plaintiffs KYLE RUCKER and LOUIS JARGOW were additionally subjected to brutal and unnecessary applications of force by Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, in that said Defendant pepper-sprayed Plaintiff KYLE RUCKER and said Defendant also seized Plaintiff LOUIS JARGOW and bodily threw Plaintiff LOUIS JARGOW into the bumper of a parked car, where one or more Defendant "John Doe" POLICE OFFICERS proceeded to additionally batter Plaintiff LOUIS JARGOW.  Both Plaintiffs RUCKER and JARGOW were arrested, detained, and then released without charges.

5.    We respectfully submit that the Defendant "John Doe" POLICE OFFICERS' deployment of the aforementioned "trap-and-arrest" tactics was both the direct as well as an indirect result of policies and practices approved, condoned, and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG, Mayor of the City of New York, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, Commissioner of the New York City Police Department and Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO, Chief of the New York City Police Department.

6.    Still further, we submit that Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, and Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO have approved, condoned, and ratified these indiscriminate "trap-and-arrest" tactics both directly as well as indirectly for the purposes of chilling individuals' First Amendment protected rights and retaliating against individuals for their legal exercise of the same.

**7.**    In sum, Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENANAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS, MILO GONZALEZ, LOUIS JARGOW and KYLE RUCKER bring this action in a quest for answers as to why they were retaliated against for their legal exercise of their First Amendment protected rights to free speech and association; subjected to indiscriminate and illegal "trap-and-arrest" tactics; detained for varying lengths of time, brutalized, and subjected to prosecution in the absence of any criminal conduct or wrongdoing.

## II. JURISDICTION

**8.**    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

**9.**    Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

**10.**    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## IV. JURY DEMAND

**11.**    Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

**12.**    Plaintiff ELIZABETH DIERKEN is an American citizen and a resident of the City and County of San Francisco, State of California.

**13.**    Plaintiff VICTORIA SOBEL is an American citizen and a resident of the City of New York, County of Kings, State of New York.

**14.**    Plaintiff JOSEPH DIAMOND is an American citizen and a resident of the City of New York, County of Kings, State of New York.

**15.**    Plaintiff BRENNAN CAVANAUGH is an American citizen and a resident of the City, County and State of New York.

**16.**    Plaintiff MIRIAM ROCEK is an American citizen and a resident of the City, County and State of New York.

**17.**    Plaintiff ARMANDO ESPINOZA is an American citizen and a resident of the City of New York, County of Queens, State of New York.

**18.**   Plaintiff ROSITA ADAMS is an American citizen and a resident of the City of Bridgeport, County of Fairfield, State of Connecticut.

**19.**   Plaintiff MILO GONZALEZ is an American citizen and a resident of the City, County and State of New York.

**20.**   Plaintiff LOUIS JARGOW is an American citizen and a resident of the City of New York, County of Kings, State of New York.

**21.**   Plaintiff KYLE RUCKER is an American citizen and a resident of the City of New York, County of Kings, State of New York.

**22.**   Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

**23.**   Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

**24.**   That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

**25.**   That at all times relevant to this action, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, either personally or through his employees, was acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

**26.**   That at all times hereinafter mentioned, the Defendant New York City Police Officers "John Does 1-12") (individually, "Defendant OFFICER JOHN DOE ___"; collectively, "Defendant "John Doe" POLICE OFFICERS"), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

**27.**   That at all times relevant to this action, the Defendant "John Doe" POLICE OFFICERS, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

**28.**   Defendant MAYOR MICHAEL R. BLOOMBERG is the Mayor of the City of New York City and the chief policymaker for the Defendant THE CITY OF NEW YORK and its department and agencies, including the New York City Police Department.

**29.**  Defendant MAYOR MICHAEL R. BLOOMBERG has approved, condoned, and ratified the unconstitutional conduct challenged herein.

**30.**  Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY is the Commissioner of the New York City Police Department, which is an agency of the Defendant THE CITY OF NEW YORK. Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY is a policymaker for the Defendant THE CITY OF NEW YORK and the New York City Police Department.

**31.**  Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY has approved, condoned and ratified the unconstitutional conduct challenged herein.

**32.**  Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO is the Chief of the Department for the New York City Police Department, which is an agency of the Defendant CITY OF NEW YORK.  Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO is a policymaker for the Defendant CITY OF NEW YORK and the New York City Police Department.

**33.**  Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO has approved, condoned and ratified the unconstitutional conduct challenged herein.

**34.**  Each and all of the acts of Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA and the Defendant "John Doe" POLICE OFFICERS (collectively, "individual Defendants") alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON  TO ALL CLAIMS

**35.**  The events described herein took place on and after Saturday, September 24th, 2011.

**36.**  On the afternoon of Saturday, September 24th, 2011, Plaintiffs were present in lower Manhattan at the same time that a march in furtherance of the O.W.S. movement was occurring.

**37.**  Some of the Plaintiffs had decided to participate in the march in order to further the O.W.S. movement by exercising their First Amendment protected rights to free speech and association.

**38.**  Some of the Plaintiffs were present to observe the march, and monitor interactions between police and protesters.

**39.** Plaintiff ROSITA ADAMS was merely present in the vicinity of Union Square on personal errands, and was not even aware of the existence of OWS prior to her arrest.

**40.** Plaintiffs, along with approximately eighty other soon-to-be mass arrestees, had observed or joined the march in question at various points throughout lower Manhattan prior to the incident complained of herein.

**41.** While isolated arrests occurred at points along the march in question, the police and other authorities present did not attempt to stop the march.

**42.** No announcement was made by police or other authorities that the march was illegal or otherwise forbidden.

**43.** Police were present with the march for substantially all of its progress.

**44.** At or around 2pm, the march arrived at Union Square.

**45.** The events described hereinafter all occurred after 2pm, and after the conclusion of the OWS march.

**46.** As some individuals, including but not limited to Plaintiffs and mass arrestees, headed south following the march, they were met by police officers including the Defendant "JOHN DOE" POLICE OFFICERS and Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA at East 12th Street and University Place.

**47.** Some or all of the above-named Defendants deployed orange netting at that time to cordon off particular individuals, including but not limited to Plaintiff KYLE RUCKER.

### PLAINTIFF KYLE RUCKER'S PEPPER SPRAYING AND ARREST

**48.** As Plaintiff KYLE RUCKER was trapped in the orange netting at East 12th Street and University Place, he was hit by pepper spray deployed by Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA.

**49.** As Plaintiff KYLE RUCKER was trapped in the orange netting at East 12th Street and University Place, he was hit by pepper spray deployed by one or more Defendant "JOHN DOE" POLICE OFFICERS.

**50.** As a result of his being struck by police pepper spray, Plaintiff KYLE RUCKER experienced pain, burning and discomfort on his scalp, face, shoulders and back.

**51.** Plaintiff KYLE RUCKER was not given an opportunity to wash off or otherwise remove the pepper spray until after he was released from custody in the late evening of September 24, 2011.

**52.**  As Plaintiff KYLE RUCKER was trapped in the orange netting, he flashed a peace sign, i.e., two fingers raised in a "V" with palm out, to several "white shirt" senior Defendant "JOHN DOE" POLICE OFFICERS.

**53.**  Without any warning, several Defendant "JOHN DOE" POLICE OFFICERS then tackled Plaintiff KYLE RUCKER and arrested him.

**54.**  As a result of being tackled by multiple Defendant "JOHN DOE" POLICE OFFICERS, Plaintiff KYLE RUCKER experienced pain, bruising and abrasions.

**55.**  Plaintiff KYLE RUCKER was handcuffed with plastic flex-cuffs that were applied very tightly.

**56.**  As a result of being tightly handcuffed, Plaintiff KYLE RUCKER experienced pain, bruising and abrasions to his wrists, and continues to experience numbness from same.

**57.**  Plaintiff KYLE RUCKER was held by police for approximately eight (8) hours thereafter, and then was released without charges of any kind.

### PLAINTIFF LOUIS JARGOW IS BRUTALIZED AND ARRESTED BY DEFENDANT BOLOGNA AND OTHER DEFENDANT OFFICERS FOR ATTEMPTING TO DOCUMENT OTHER INDIVIDUALS' ARRESTS

**58.**  At or around the same time, Plaintiff LOUIS JARGOW was present nearby as a citizen journalist documenting police encounters with protestors.

**59.**  In this capacity, Plaintiff LOUIS JARGOW was carrying a camera, lights, and a microphone at the time of the incidents at issue here.

**60.**  As Plaintiff LOUIS JARGOW was proceeding down University Place, he observed several individuals being violently arrested by several Defendant "JOHN DOE" POLICE OFFICERS.

**61.**  Plaintiff LOUIS JARGOW filmed this encounter from a distance, and asked why these individuals were being arrested.

**62.**  Plaintiff LOUIS JARGOW was then bodily seized without warning or apparent justification by Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA.

**63.**  Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA grabbed Plaintiff LOUIS JARGOW and threw Plaintiff LOUIS JARGOW into the bumper of a nearby parked car.[1]

---

[1] This incident was documented in Appendix I, Incident 11 in The Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School publication "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street," published July 25, 2012, *available online at* http://www.documentcloud.org/documents/403969-suppressing-

**64.** Thereafter, several Defendant "JOHN DOE" POLICE OFFICERS struck Plaintiff LOUIS JARGOW with their hands and batons.

**65.** Plaintiff LOUIS JARGOW suffered pain, bruising and abrasions from these offensive contacts by Defendant POLICE OFFICERS.

**66.** Plaintiff LOUIS JARGOW was then handcuffed with plastic flex-cuffs and arrested.

**67.** Plaintiff LOUIS JARGOW's recording equipment was seized by police.

**68.** Plaintiff LOUIS JARGOW requested medical attention numerous times, prompting one Defendant "JOHN DOE" POLICE OFFICER to state, in sum and substance, "redistribute the pain, motherfucker."

**69.** At length, Plaintiff LOUIS JARGOW was seen and treated by a paramedic who disinfected and bandaged his wounds.

**70.** After approximately eight (8) hours in police custody, Plaintiff LOUIS JARGOW was released without charges of any kind.

**71.** The recording equipment that was being used by Plaintiff LOUIS JARGOW's was returned broken.

### PLAINTIFF MILO GONZALEZ IS ASSAULTED AND ARRESTED FOR COMMENTING ON A POLICE ASSAULT OF ANOTHER INDIVIDUAL

**72.** Plaintiff MILO GONZALEZ was walking south on University Place when he observed a group of police officers violently subduing another individual.

**73.** On observing this, Plaintiff MILO GONZALEZ called out "Shame!"

**74.** Officers ordered Plaintiff MILO GONZALEZ and others to back away from the area.

**75.** Plaintiff MILO GONZALEZ moved to comply, and was punched in the mouth by a Defendant "JOHN DOE" POLICE OFFICER as he attempted to do so.

**76.** Plaintiff MILO GONZALEZ began to verbally protest this assault, and was physically seized and thrown to the ground by the Defendant "JOHN DOE" POLICE OFFICER, who then proceeded to put his knee on Plaintiff MILO GONZALEZ' neck before handcuffing Plaintiff MILO GONZALEZ with flex cuffs and arresting him.

---

protest.html (last visited 10/1/12), video of incident: LibertyPlazaRev, "Unbelievable Protest Footage. NYPD Drag Girl Across the Street, YOUTUBE (Sept. 24, 2011), http://www.youtube.com/watch?v=eU9Dx0x9h4A (grab and throw to ground at 3:05).

77.  As a result of these offensive physical contacts, Plaintiff MILO GONZALEZ suffered pain, bruising and abrasions, and continues to experience limited mobility in his left shoulder.

78.  Plaintiffs MILO GONZALEZ and KYLE RUCKER were held for a number of hours in a police van outside of One Police Plaza with several other individuals.

79.  All of the windows and doors of said police van were closed and locked, causing the police van to be uncomfortably hot.

80.  Plaintiff KYLE RUCKER, who had been pepper sprayed by one or more of the individual Defendants, was emanating pepper spray in this hot-box environment, causing pain and discomfort to Plaintiff MILO GONZALEZ and others.

81.  Another individual in the police van appeared to be suffering a concussion, and Plaintiff MILO GONZALEZ attempted multiple times to get the attention of various Defendant "JOHN DOE" POLICE OFFICERS, but the Defendant "JOHN DOE" POLICE OFFICERS merely laughed at Plaintiff MILO GONZALEZ' entreaties.

82.  Plaintiff MILO GONZALEZ experienced pain, discomfort, humiliation and fear as a result of the conduct of these Defendant "JOHN DOE" POLICE OFFICERS.

83.  Plaintiff MILO GONZALEZ was held by police for approximately eight (8) hours before being released without charges of any kind.

### DEFENDANTS' PRE-PLANNED "TRAP-AND-ARREST" TACTICS

84.  At or around this time, following their arrival at Union Square and at the conclusion of the O.W.S. march, some of the Plaintiffs and mass arrestees proceeded south on University Place.

85.  Plaintiff ROSITA ADAMS was strolling on University Place enjoying a pleasant afternoon and taking photographs of downtown Manhattan street life for pleasure.

86.  As Plaintiffs and mass arrestees, walking South along University Place, approached East 12th Street, the Defendant "John Doe" POLICE OFFICERS put up mesh barricades that blocked Plaintiffs' and mass arrestees' access to University Place south of East 12th Street.

87.  At no point before or after the Defendant "John Doe" POLICE OFFICERS placed meshed barricades at the intersection of University Place and East 12th

Street, did the Defendant "John Doe" POLICE OFFICERS warn Plaintiffs and mass arrestees that their conduct would lead to their arrest.

88.  The Defendant "John Doe" POLICE OFFICERS' mesh barricades that blocked Plaintiffs' and mass arrestees' access to University Place South of East 12 Street, in effect, forced Plaintiffs and mass arrestees to walk west along East 12th Street.

89.  Upon information and belief, the Defendant "John Doe" POLICE OFFICERS did not put up the aforementioned mesh barricades in order to prevent the northbound University Place vehicular traffic from crossing East 12th Street.

90.  Upon information and belief, at this time the Defendant "John Doe" POLICE OFFICERS had no cognizable lawful reason for placing mesh barricades at the intersection of East 12th Street and University Place.

91.  Upon information and belief, the Defendant "John Doe" POLICE OFFICERS' act of placing mesh barricades at the intersection of East 12th Street and University Place and thus forcing Plaintiffs and mass arrestees to walk west along 12th Street, was the direct result of policies and practices — approved, condoned, and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG as well as supported and carried out by Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO — designed to effectively chill and suppress Plaintiffs', mass arrestees, and generally all individuals' exercise of their First Amendment protected rights to free speech and association.

92.  Upon information and belief, the Defendant "John Doe" POLICE OFFICERS' act of placing mesh barricades at the intersection of East 12th Street and University Place and thus forcing Plaintiffs and mass arrestees to walk west along 12th Street, was an indirect result of policies and practices — approved, condoned, and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG as well as supported and carried out by Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO — designed to effectively chill and suppress Plaintiffs', mass arrestees, and generally all individuals' exercise of their First Amendment protected rights to free speech and association.

93.  At or around this time, as a result of the Defendant "John Doe" POLICE OFFCERS' East 12th Street and University Place mesh barricades, Plaintiffs and mass arrestees were forced to walk west along East 12th Street toward 5th Avenue.

94.  On information and belief, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO was present at or around East 12th Street and University Place at this time.

**95.**   Process issued to one non-party arrestee arrested near this location at or around 2:45pm on September 24, 2011, indicates that the individual in question was arrested by Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO.

**96.**   On information and belief, NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO authorized or participated in substantially all of the conduct alleged herein following the conclusion of the OWS march to Union Square.

### THE REMAINING PLAINTIFFS ARE ARRESTED EN MASSE

**97.**   At or around this time, a number of Plaintiffs and mass arrestees began walking west on East 12th Street.

**98.**   Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND and VICTORIA SOBEL were standing on the sidewalk in front of the "Cinema Village" movie theater, changing the camera batteries on a camera being used for live-stream reporting.

**99.**   Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY, in describing the events complained of herein to Vanity Fair Magazine, stated, "…on Saturday [September 24, 2011] in Union Square Park, they [OWS march participants] decided to violate the tacit understanding that they would stay on the sidewalk. It was at University Place where they ran down the street and started blocking traffic. I happened to be in the area that day and I actually saw people doing this. That's where the first large number of arrests took place."[2]

**100.** Despite Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY'S assertion that a "tacit understanding" existed between the Defendants and the OWS march participants, Defendants engaged in no communications with OWS participants, Plaintiffs, or mass arrestees to establish said "tacit understanding."

**101.** Plaintiffs are aware of no persons among OWS participants, Plaintiffs, or mass arrestees who were present on September 24, 2011 with whom Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY or his agents communicated with in any way to establish any form of "tacit understanding."

**102.**  Plaintiffs and mass arrestees, in actuality, despite being in close proximity to police officers and Defendant POLICE OFFICERS for several hours, received no warnings or instructions from said police officers relating to staying on the sidewalk.

---

[2]Chafkin, Max, "Revolution Number 99," Vanity Fair, February, 2012. Article incorporated by reference herein and available online at http://www.vanityfair.com/politics/2012/02/occupy-wall-street-201202 .

**103.** In fact, in response to the Defendant "John Doe" POLICE OFFICERS' observations of a number of Plaintiffs and mass arrestees walking on the roadway of East 12th Street, the Defendant "John Doe" POLICE OFFICERS only ordered such Plaintiffs and mass arrestees to continue walking west along East 12th Street, without specifying whether Plaintiffs and mass arrestees should walk along the roadway or the sidewalks of the same.

**104.** Plaintiffs and mass arrestees, relying upon the Defendant "John Doe" POLICE OFFICERS' stated instructions and guidance, walked west along East 12th Street.

**105.** At no point throughout the afternoon of September 24th, 2011 did the Defendant "John Doe" POLICE OFFICERS provide Plaintiffs with any form of specific fair warning that their non-violent and non-disruptive conduct was illegal and would lead to their arrests.

**106.** At no point throughout the afternoon of September 24th, 2011 did the Defendant "John Doe" POLICE OFFICERS provide Plaintiffs and mass arrestees with a reasonable opportunity to refrain from engaging in conduct that would lead to their arrests.

**107.** Given that Plaintiffs' and mass arrestees' non-violent and non-disruptive conduct throughout the afternoon of September 24th, 2011, at all times, presented no threat of imminent harm, the Defendant "John Doe" POLICE OFFICERS were without a pressing law enforcement need to effect mass arrests.

**108.** Shortly after Plaintiffs and mass arrestees began walking west along East 12th Street, Plaintiffs and mass arrestees approached the intersection of East 12th Street and 5th Avenue.

**109.** As Plaintiffs and mass arrestees approached the intersection of East 12th Street and 5th Avenue, the Defendant "John Doe" POLICE OFFICERS put up mesh barricades that prevented Plaintiffs and mass arrestees from proceeding onto 5th Avenue.

**110.** At or around this time, the Defendant "John Doe" POLICE OFFICERS who had put up the mesh barricade along University Place south of East 12th Street moved said mesh barrier to prevent Plaintiffs and mass arrestees from exiting East 12th Street back onto University Place.

**111.** Plaintiffs and mass arrestees were trapped by Defendant POLICE OFFICERS on East 12th Street between University Place and 5th Avenue.

**112.** At no point before the Defendant "John Doe" POLICE OFFICERS trapped Plaintiffs and mass arrestees on East 12th Street between University Place and 5th Avenue did the Defendant "John Doe" POLICE OFFICERS order Plaintiffs or mass arrestees to disperse.

**113.** At no point before the Defendant "John Doe" POLICE OFFICERS trapped Plaintiffs and mass arrestees on East 12th Street between University Place and 5th Avenue did the Defendant "John Doe" POLICE OFFICERS warn Plaintiffs and mass arrestees that their conduct would lead to their arrest.

**114.** At no point before or after the Defendant "John Doe" POLICE OFFICERS trapped Plaintiffs and mass arrestees on East 12th Street between University Place and 5th Avenue did Plaintiffs intentionally cause public inconvenience, annoyance, or alarm by blocking vehicular traffic.

**115.** At no point before or after the Defendant "John Doe" POLICE OFFICERS trapped Plaintiffs and mass arrestees on East 12th Street between University Place and 5th Avenue did Plaintiffs intentionally cause public inconvenience, annoyance, or alarm by blocking pedestrian traffic.

**116.** Upon information and belief, any vehicular or pedestrian traffic that was disrupted along East 12th Street on or around University Place and 5th Avenue on the afternoon of September 24, 2011 was disrupted solely due to the mesh barricades put up by the Defendant "John Doe" POLICE OFFICERS.

**117.** Upon information and belief, any vehicular or pedestrian traffic that was disrupted along East 12th Street on or around University Place and 5th Avenue on the afternoon of September 24, 2011 was disrupted primarily due to the mesh barricades put up by the Defendant "John Doe" POLICE OFFICERS.

**118.** Some of the Defendant "John Doe" POLICE OFFICERS, mesh barricades in-hand, continued walking west along East 12th Street toward Plaintiffs and mass arrestees.

**119.** The Defendant "John Doe" POLICE OFFICERS' mesh barricades stretched across the entire width of East 12th Street, including both the north and south sidewalks of the same.

**120.** Plaintiff BRENNAN CAVANAUGH, a citizen journalist, was photographing this police action from further east on East 12th Street, not within the police cordon being closed on the other remaining Plaintiffs and eventual mass arrestees.

**121.** As Plaintiff BRENNAN CAVANAUGH was standing on the sidewalk photographing police officers on the other side of the orange mesh barricade in front of Plaintiff BRENNAN CAVANAUGH who were arresting individuals and securing them with flex-cuffs, another mesh barricade was raised behind Plaintiff BRENNAN CAVANAUGH.

**122.** Plaintiff BRENNAN CAVANAUGH was then arrested and handcuffed by a Defendant "JOHN DOE" POLICE OFFICER in plainclothes, wearing an off-white long-sleeve T-shirt or sweatshirt and blue jeans, who appeared to be a Caucasian male in his forties.

13

**123.** The Defendant "JOHN DOE" POLICE OFFICER who arrested Plaintiff BRENNAN CAVANAUGH did not identify himself or show a badge, and handed Plaintiff BRENNAN CAVANAUGH off to a uniformed officer for transport and processing after handcuffing Plaintiff BRENNAN CAVANAUGH.

**124.** At or around this time, the remaining Plaintiffs were afraid that the Defendant "John Doe" POLICE OFFICERS would arrest them as retaliation for their collective act of participating in and observing a march in order to exercise their First Amendment protected rights to free speech and association.

**125.** At or around this time, while some of the Defendant "John Doe" POLICE OFFICERS continued to man the mesh barricades stretching across the width of East 12th Street on both sides of the remaining Plaintiffs and mass arrestees, trapping the remaining Plaintiffs and mass arrestees.

**126.** At this time, the Defendant "John Doe" POLICE OFFICERS had not received reasonably trustworthy information of facts or circumstances that were sufficient to warrant them in the belief that Plaintiffs and mass arrestees had committed or were committing constitutionally cognizable crimes or violations of any sort.

**127.** At this time, the Defendant "John Doe" POLICE OFFICERS had neither personally observed nor acquired information of facts or circumstances that were sufficient to warrant them in the belief that Plaintiffs and mass arrestees had committed or were committing constitutionally cognizable crimes or violations of any sort.

**128.** At this time, there were no facts or circumstances present that were sufficient to warrant a person of reasonable caution in the belief that Plaintiffs and mass arrestees had committed constitutionally cognizable crimes or violations of any sort.

**129.** At this time, the preponderance of Plaintiffs and mass arrestees had not committed crimes or violations of any sort, but had only exercised their First Amendment protected rights to free speech and association.

**130.** Plaintiff ROSITA ADAMS was merely in the wrong place at the wrong time, in close proximity to persons who were exercising their First Amendment protected rights to free speech and association.

**131.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff ELIZABETH DIERKEN, despite the fact that Plaintiff ELIZABETH DIERKEN was not engaged in any illegal activity of any kind.

**132.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff JOSEPH DIAMOND, despite the fact that Plaintiff JOSEPH DIAMOND was not engaged in any illegal activity of any kind.

14

**133.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff VICTORIA SOBEL, despite the fact that Plaintiff VICTORIA SOBEL was not engaged in any illegal activity of any kind.

**134.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff MIRIAM ROCEK, despite the fact that Plaintiff MIRIAM ROCEK was not engaged in any illegal activity of any kind.

**135.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff ARMANDO ESPINOZA, despite the fact that Plaintiff ARMANDO ESPINOZA was not engaged in any illegal activity of any kind.

**136.** At or around this time, the Defendant "John Doe" POLICE OFFICERS handcuffed and arrested Plaintiff ROSITA ADAMS, despite the fact that Plaintiff ROSITA ADAMS was not engaged in any illegal activity of any kind.

**137.** Several Defendant "John Doe" POLICE OFFICERS ordered Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS and mass arrestees to stand up against the buildings along the south sidewalk of East 12th Street.

**138.** Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS and mass arrestees complied with the Defendant "John Doe" POLICE OFFICERS' orders.

### DEFENDANT'S UNLAWFUL DETAINMENT OF PLAINTIFFS FOLLOWING THE PRE-PLANNED AND CALCULATED "TRAP-AND-ARREST" TACTICS

**139.** At or around this time, the Defendant "John Doe" POLICE OFFICERS guided the unnecessarily handcuffed and arrested Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS and mass arrestees to the intersection of West 12th Street and 5th Avenue.

**140.** At or around this time, the Defendant "John Doe" POLICE OFFICERS ordered the unnecessarily handcuffed and arrested Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS and mass arrestees to sit on the pavement of the West 12th Street and 5th Avenue intersection.

**141.** The Defendant "John Doe" POLICE OFFICERS forced Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS to sit by the West 12th Street and 5th Avenue intersection for approximately twenty minutes.

**142.** Following the illegally arrested Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS' approximate twenty minute wait, the Defendant "John Doe" POLICE OFFICERS ordered Plaintiffs to board one of several busses owned by Defendant CITY OF NEW YORK that were located near West 12th Street and 5th Avenue ("Municipal Busses"), or police vans.

**143.** Upon information and belief, the Municipal Busses were waiting near West 12th Street and 5th Avenue because the Defendants had planned, in advance, to conduct the indiscriminate and illegal "trap-and-arrest" conduct complained of herein.

**144.** At or around this time, police officers or agents of Defendant CITY OF NEW YORK drove the Municipal Busses and police vans, containing arrested Plaintiffs and mass arrestees, to One Police Plaza.

**145.** Shortly after the Municipal Busses and police vans arrived at One Police Plaza, the Defendant "John Doe" POLICE OFFICERS forced Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS to sit on the Municipal Busses for approximately four hours.

**146.** In that time, Plaintiff BRENNAN CAVANAUGH's flex cuffs were replaced, following observations from mass arrestees that his initial flex cuffs were applied so tightly that Plaintiff BRENNAN CAVANAUGH's hands were turning blue.

**147.** Following Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS' four hour wait on the Municipal Busses and police vans, the Defendant "John Doe" POLICE OFFICERS brought these Plaintiffs, still unnecessarily handcuffed, into One Police Plaza.

**148.** Several plaintiffs observed senior Defendant "JOHN DOE" POLICE OFFICERS instructing junior officers as to assignments of arrests.

**149.** On information and belief, Plaintiff ARMANDO ESPINOZA's assigned arresting officer had reported directly to One Police Plaza from his assigned posting in the South Bronx, and had no idea why Plaintiff ARMANDO ESPINOZA was facing arrest.

**150.** On information and belief, Plaintiff VICTORIA SOBEL was assigned to one putative arresting officer initially, and then was reassigned to another, neither of whom had been present for Plaintiff VICTORIA SOBEL's arrest.

**151.** At or around this time, the Defendant "John Doe" POLICE OFFICERS performed frisks and pat downs of Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS.

16

**152.** At or around this time, the Defendant "John Doe" POLICE OFFICERS seized Plaintiffs' personal belongings.

**153.** At or around approximately 8:00pm, the Defendant "John Doe" POLICE OFFICERS placed male Plaintiffs BRENNAN CAVANAUGH, JOSEPH DIAMOND, ARMANDO ESPINOZA and male mass arrestees into a single holding cell within One Police Plaza.

**154.** At or around approximately 8:00pm, the Defendant "John Doe" POLICE OFFICERS placed female Plaintiffs ELIZABETH DIERKEN, VICTORIA SOBEL, MIRIAM ROCEK, ROSITA ADAMS and female mass arrestees in groups of six or more into small holding cells within One Police Plaza.

**155.** The male and female mass holding cells within One Police Plaza were only equipped with one toilet, one bed, and one sink per cell.

**156.** Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS — having already spent four hours, handcuffed, sitting, and waiting on the Municipal Bus — were uncomfortable in the holding cells within One Police Plaza.

**157.** Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS — having already spent four hours, handcuffed, sitting, and waiting on the Municipal Bus — were frightened and humiliated by having to still wait further in the single holding cell within One Police Plaza.

**158.** Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS would end up spending approximately nine more hours sitting and waiting in the holding cells within One Police Plaza.

**159.** Between approximately 11:00pm and approximately 4:00am on September 25th, 2011, the Defendant "John Doe" POLICE OFFICERS released Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS from the holding cells.

**160.** Plaintiff ROSITA ADAMS was released at approximately 12:00am.

**161.** Plaintiff ARMANDO ESPINOZA was released at approximately 1:00am.

**162.** Plaintiff MIRIAM ROCEK was released at approximately 2:30am.

**163.** Plaintiff BRENNAN CAVANAUGH was released at approximately 3:25am.

**164.** Plaintiffs VICTORIA SOBEL and ELIZABETH DIERKEN were released shortly after 4:00am.

**165.** Between approximately 11:00pm and approximately 4:00am on September 25th, 2011, the Defendant "John Doe" POLICE OFFICERS released Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS from One Police Plaza with Desk Appearance Tickets for Disorderly Conduct under PL §240.20, a violation and not a crime.

**166.** New York City Police Officers have discretion to issue summonses for Disorderly Conduct, without arresting persons accused of the violation.

**167.** On information and belief, Plaintiffs and mass arrestees were arrested to chill and deter them from engaging in further First Amendment protected expression within the jurisdiction of Defendant CITY OF NEW YORK.

**168.** On information and belief, Plaintiffs and mass arrestees were arrested to prevent them from engaging in further First Amendment protected expression on September 24, 2011.

**169.** Following these events, Plaintiff ELIZABETH DIERKEN appeared before the court on four (4) occasions.

**170.** Plaintiff ELIZABETH DIERKEN incurred significant expenses flying from San Francisco to New York City to defend herself against these charges.

**171.** Following these events, at the time of Plaintiff ELIZABETH DIERKEN'S final and most recent appearance before the court, Plaintiff ELIZABETH DIERKEN received an Adjournment in Contemplation of Dismissal of all violations interposed against her, and her case has now been dismissed and sealed.

**172.** Plaintiff ELIZABETH DIERKEN accepted an Adjournment in Contemplation of Dismissal rather than proving her innocence at trial in large part because of the expense involved in flying back and forth across the country for court appearances.

**173.** Following these events, Plaintiff JOSEPH DIAMOND appeared before the court on two (2) occasions.

**174.** Following these events, the charges of violating P.L. §§240.20(5)(6) which had been filed against Plaintiff JOSEPH DIAMOND were dismissed by the New York County District Attorney, whose agent represented in open court that they could not prove beyond a reasonable doubt that Plaintiff JOSEPH DIAMOND had violated P.L. §§240.20(5)(6).

**175.** Following these events, Plaintiff BRENNAN CAVANAUGH appeared before the court on two (2) occassions.

**176.** Following these events, Plaintiff BRENNAN CAVANAUGH received an Adjournment in Contemplation of Dismissal for the charges of violating P.L. §§240.20(5)(6).

**177.** Following these events, Plaintiff VICTORIA SOBEL appeared before the court on four (4) occasions.

**178.** Following these events, Plaintiff VICTORIA SOBEL received an Adjournment in Contemplation of Dismissal for the charges of violating P.L. §§240.20(5)(6), and her case has now been dismissed and sealed.

**179.** Following these events, Plaintiff MIRIAM ROCEK appeared before the court on two (2) occasions.

**180.** Following these events, the charges of violating P.L. §§240.20(5)(6) which had been filed against Plaintiff MIRIAM ROCEK were dismissed by the New York County District Attorney, whose agent represented in open court that they could not prove beyond a reasonable doubt that Plaintiff MIRIAM ROCEK had violated P.L. §§240.20(5)(6).

**181.** Following these events, Plaintiff ARMANDO ESPINOZA appeared before the court on two (2) occasions.

**182.** Following these events, the charges of violating P.L. §§240.20(5)(6) which had been filed against Plaintiff ARMANDO ESPINOZA were dismissed by the New York County District Attorney, whose agent represented in open court that they could not prove beyond a reasonable doubt that Plaintiff ARMANDO ESPINOZA had violated P.L. §§240.20(5)(6).

**183.** Following these events, Plaintiff ROSITA ADAMS appeared before the court on two (2) occasions.

**184.** Following these events, the charges of violating P.L. §§240.20(5)(6) which had been filed against Plaintiff ROSITA ADAMS were dismissed by the New York County District Attorney, whose agent represented in open court that they could not prove beyond a reasonable doubt that Plaintiff ROSITA ADAMS had violated P.L. §§240.20(5)(6).

**185.** Upon information and belief, Defendant CITY OF NEW YORK, Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO have adopted arbitrary and non-content neutral practices and customs with respect to the regulation of parades and other like mass assemblies.

**186.** Upon information and belief, the policies and practices of Defendant CITY OF NEW YORK, as effected and/or condoned Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and Defendant NEW YORK CITY POLICE CHIEF

JOSEPH ESPOSITO and their agents with respect to mass assemblies have created and continue to foster a sense of confusion for individuals seeking to peaceably assemble in New York City, because it is unclear what forms of public assembly are proscribed and what forms of public assembly are allowed to proceed without police intervention.

**187.** Upon information and belief, instead of creating and subsequently enforcing content neutral policies and practices that delineate the circumstances under which persons can peaceably assemble without threat of arrest by officers and agents of Defendant CITY OF NEW YORK, Defendants have relied upon vague and inconsistently applied customs and practices for policing group assemblies.

**188.** These customs and practices embrace and enable mass arrest tactics such as deployed by Defendants against Plaintiffs and mass arrestees on the afternoon of September 24th, 2011.

**189.** Upon information and belief, Defendants have relied upon indiscriminate and illegal "Trap-and-Arrest" mass arrest tactics such as deployed on the afternoon of September 24th, 2011 because such tactics are more useful for effectively chilling individuals' First Amendment protected rights to free speech and association than the Constitutionally-required tactic of developing individualized probable cause to effect specific arrests of individuals.

**190.** Upon information and belief, the Defendants' probable-cause-less arrest and overnight detainment of Plaintiffs was a direct result of pre-planned and calculated decisions by Defendant MAYOR MICHAEL R. BLOOMBERG and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO intended to chill Plaintiffs' First Amendment protected rights to free speech and association.

**191.** Upon information and belief, the Defendants' probable-cause-less arrest and overnight detainment of Plaintiffs was an indirect result of policies and practices both approved and ratified by Defendant MAYOR MICHAEL R. BLOOMBERG as well as supported and carried out by Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO to effectively chill and suppress Plaintiffs', mass arrestees, and generally all individuals' exercise of their First Amendment protected rights to free speech and association.

**192.** Upon information and belief, Plaintiffs were illegally arrested and detained as a result of the Defendant "John Doe" POLICE OFFICERS' attempt to meet the New York Police Department's quantitative enforcement productivity goals, i.e., arrest quotas.

**193.** At the time of the September 24th, 2011 incident and arrest of Plaintiffs, not one of the Plaintiffs had a warrant out for his or her arrest.

**194.** At the time of the September 24th, 2011 incident and arrest of Plaintiffs, not one of the Plaintiffs was in possession of a weapon of any sort.

**195.** At the time of the September 24th, 2011 incident and arrest of Plaintiffs, not one of the Plaintiffs was in possession of a controlled substance of any sort.

**196.** At the time of the September 24th, 2011 incident and arrest of Plaintiffs, not one of the Plaintiffs was engaged in any illegal activity of any kind, but instead Plaintiffs were lawfully exercising their First Amendment Protected rights to free speech and association.

**197.** As a result of the foregoing, Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENANAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, ROSITA ADAMS, MILO GONZALEZ, LOUIS JARGOW and KYLE RUCKER sustained, inter alia, mental injuries, emotional distress, embarrassment, temporary deprivation of property, humiliation, and deprivation of their constitutional rights.

---

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

---

**198.** Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**199.** All of the aforementioned acts of the Defendant CITY, and the individual Defendants and their agents, servants and employees, were carried out under the color of state law.

**200.** All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

**201.** The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

**202.** The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**203.** The individual Defendants, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in

Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**204.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputations and standings within their communities.

**205.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983
_____

**206.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**207.** Plaintiffs were arrested by Defendant "JOHN DOE" POLICE OFFICERS in the absence of probable cause, at the direction of, or under practices, policies or customs promulgated by, Defendant MAYOR MICHAEL R. BLOOMBERG, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND W. KELLY and DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO.

**208.** Plaintiffs MILO GONZALEZ, LOUIS JARGOW and KYLE RUCKER were each arrested and held in police custody for a period of time before being released without charges.

**209.** Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENNAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, and ROSITA ADAMS were arrested and unnecessarily forced to sit on the pavement at the intersection of 5th Avenue and East 12th Street for a period of time.

**210.** Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENNAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, and ROSITA ADAMS were arrested and unnecessarily transported to One Police Plaza by the Defendant "John Doe" POLICE OFFICERS.

**211.** Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENNAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, and ROSITA ADAMS were arrested and transported to One Police Plaza by the Defendant "John Doe" POLICE OFFICERS in the absence of probable cause for their arrest.

**212.** Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENNAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, and

ROSITA ADAMS were arrested and unnecessarily forced to wait on the aforementioned Municipal Bus for approximately four hours after arriving at One Police Plaza.

**213.** As a result of the aforesaid conduct by Defendants, Plaintiffs were subjected to illegal, improper and false arrests by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

**214.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standing within their communities.

**215.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983**

**216.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**217.** Plaintiffs were unnecessarily handcuffed for extended periods of time by the Defendant "John Doe" POLICE OFFICERS.

**218.** Plaintiffs KYLE RUCKER and BRENNAN CAVANAUGH experienced pain, bruising, abrasions, loss of circulation and numbness from being handcuffed too tightly.

**219.** Plaintiff KYLE RUCKER was unnecessarily struck by pepper spray deployed by Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA.

**220.** Plaintiff KYLE RUCKER was unnecessarily struck by pepper spray deployed by one or more Defendant "JOHN DOE" POLICE OFFICERS.

**221.** Plaintiff KYLE RUCKER was unnecessarily tackled by several Defendant "JOHN DOE" POLICE OFFICERS.

**222.** Plaintiff LOUIS JARGOW was unnecessarily thrown into a car bumper by Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA.

**223.** Plaintiff LOUIS JARGOW was unnecessarily struck with hands and batons by several Defendant "JOHN DOE" POLICE OFFICERS.

**224.** Plaintiff MILO GONZALEZ was unnecessarily punched in the mouth and thrown to the ground by a Defendant "JOHN DOE" POLICE OFFICER, who then proceeded to unnecessarily kneel on Plaintiff MILO GONZALEZ' neck.

**225.** The circumstances presented to the Defendant "John Doe" POLICE OFFICERS and Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA at that time did not support any of the above applications of force on Plaintiffs.

**226.** Plaintiffs were subjected to excessive force and were assaulted by the Defendant "John Doe" POLICE OFFICERS and Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, in violation of their rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

**227.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**228.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## <u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

**229.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**230.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY had an affirmative duty to intervene on the Plaintiffs behalf to prevent the violation of their constitutional rights.

**231.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite having had a realistic opportunity to do so.

**232.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite having substantially contributed to the circumstances within which the Plaintiffs' rights were violated by their affirmative conduct.

**233.** The Defendant "John Doe" POLICE OFFICERS, Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY failed to intervene on Plaintiffs' behalf in order to prevent the violation of their constitutional rights despite their awareness that their rights were being violated.

**234.** Several Defendant "JOHN DOE" POLICE OFFICERS observed Plaintiffs MILO GONZALEZ and KYLE RUCKER calling for help and medical assistance after one or more Defendant "JOHN DOE" POLICE OFFICERS locked Plaintiffs MILO GONZALEZ and KYLE RUCKER as well as several other arrestees in a police van with closed windows for several hours, and failed to intervene, laughing at Plaintiff MILO GONZALEZ and Plaintiff KYLE RUCKER's entreaties for assistance.

**235.** As a result of the aforementioned conduct of the individual Defendants, Plaintiffs' constitutional rights were violated.

**236.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**237.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION**
**UNDER 42 U.S.C. § 1983**

**238.** Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**239.** At or around the times that Plaintiffs came into contact with Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS, Plaintiffs were or had recently been engaging in protected speech and conduct, including but not limited to

(a) peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues;

(b) documenting police conduct with respect to persons peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues;

(c) commenting on police conduct in the course of arrests and police use of

25

force in the course of arrests; and

(d) walking and being present in proximity with persons peaceably assembling in public streets for the purpose of engaging in First Amendment protected expression related to critical social issues.

**240.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action against Plaintiffs for engaging in such protected speech and conduct.

**241.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse actions against Plaintiffs by using wrongful and unjustified force upon Plaintiffs.

**242.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action against Plaintiffs by unlawfully arresting them without probable cause.

**243.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action against Plaintiffs ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, BRENNAN CAVANAUGH, MIRIAM ROCEK, ARMANDO ESPINOZA, and ROSITA ADAMS by falsely accusing them of crimes and violations.

**244.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS took adverse action against Plaintiffs by taking Plaintiffs into Police custody and detaining them against their will.

**245.** There was a causal connection between the protected speech and conduct engaged in by Plaintiffs and in proximity to Plaintiffs and the adverse actions taken by Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS.

**246.** The causal connection between the protected speech and conduct engaged in by Plaintiffs and in proximity to Plaintiffs and the adverse actions taken against Plaintiff by Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS was demonstrated by, among other things, the fact that members of the NYPD have previously and on multiple occasions subsequent employed excessive force and constitutionally dubious mass arrest tactics in the context of peaceful First Amendment protected expression relating to social issues, in contexts including but not limited to the 2004 RNC, and at subsequent OWS related protests

including but not limited to mass arrests undertaken on the Brooklyn Bridge on October 1, 2011 and in lower Manhattan on January 1, 2012.

**247.** The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse actions taken against Plaintiffs by Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS was demonstrated by, among other things, the absence of probable cause justifying Plaintiffs' arrest.

**248.** The causal connection between the protected speech and conduct engaged in by Plaintiffs and the adverse action taken against Plaintiff by Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS was demonstrated by, amongst other things, the explicit denial by Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY that arrests were undertaken on September 24, 2011 for violations of New York City's public assembly statutes, but were instead undertaken following the perceived violation of a "tacit understanding" between police and protestors, which was a product of Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY's own discretion, not a content neutral restriction on expression.

**249.** That Plaintiffs were falsely accused of crimes and violations and were taken into Police custody and detained against their will.

**250.** That following their arrests, Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS were subjected to prosecution for disorderly conduct, a violation and not a crime.

**251.** The above-described charges were pretexts intended to justify the Defendant "JOHN DOE" POLICE OFFICERS' illegal arrests of Plaintiffs BRENNAN CAVANAUGH, ELIZABETH DIERKEN, JOSEPH DIAMOND, VICTORIA SOBEL, MIRIAM ROCEK, ARMANDO ESPINOZA and ROSITA ADAMS.

**252.** The actions of Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and were designed to and did cause bodily harm, pain and suffering both in violation of Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth

Amendments to the United States Constitution as well as the Constitution of the State of New York.

**253.** That the conduct and actions of Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS acting under color of State law, in assaulting, detaining and imprisoning the Plaintiffs were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**254.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS deprived Plaintiffs of their liberty in violation of both their civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York, or for their proximity to those exercising said rights.

**255.** Defendant NEW YORK CITY DEPUTY INSPECTOR ANTHONY BOLOGNA, DEFENDANT NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and the Defendant "JOHN DOE" POLICE OFFICERS' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

**256.** As a result of the above constitutionally impermissible conduct, Plaintiffs was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

**257.** As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

**258.** Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS repeat, reiterate and reallege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**259.** Defendants misrepresented and falsified evidence before the District Attorney.

**260.** Defendants did not make a complete and full statement of facts to the District Attorney.

**261.** Defendants withheld exculpatory evidence from the District Attorney.

**262.** Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**263.** Defendants lacked probable cause to initiate criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**264.** Defendants acted with malice in initiating criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**265.** Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**266.** Defendants lacked probable cause to continue criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**267.** Defendants acted with malice in continuing criminal proceedings against Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS.

**268.** Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

**269.** Notwithstanding the perjurious, fraudulent and malicious conduct of defendants, the criminal proceedings were terminated in Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS favor, when all charges against them were dismissed.

**270.** As a result of the above constitutionally impermissible conduct, Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS werw caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within their communities.

**271.** As a result of Defendants' impermissible conduct, Plaintiffs JOSEPH DIAMOND, ARMANDO ESPINOZA, MIRIAM ROCEK and ROSITA ADAMS demands judgment against Defendants in a sum of money to be determined at trial.

### SEVENTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

**272.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**273.** Plaintiffs also incorporate herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**274.** Defendants arrested and incarcerated Plaintiffs in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests and incarcerations would jeopardize the Plaintiffs' liberty, wellbeing, safety, and constitutional rights.

**275.** The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**276.** The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

**277.** The aforementioned customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals engaged in first amendment protected expression without probable cause due to perceived lack of respect for the police officer (i.e., "contempt of cop" arrests of persons engaged in first amendment protected expression);

b) wrongfully arresting individuals engaged in first amendment protected expression without probable cause in attempts to justify excessive uses of force against same (i.e. "contempt of cop" "cover charge" arrests; condoning brutality);

c) wrongfully arresting innocent persons engaged in first amendment protected expression in order to meet quantitative "productivity goals" (i.e., arrest quotas).

d) wrongfully arresting persons without probable cause due to perceived lack of respect for the police officer; in order to teach a lesson in respect while also satisfying quantitative "productivity goals" (i.e., "contempt of cop" arrests used to satisfy arrest quotas).

e) the pervasive failure to supervise, train, instruct and discipline police officers with respect to the constitutional rights of citizens, and encouraging the ensuing misconduct through condoning officers' widespread custom or practice known as the "Blue Wall of Silence," wherein officers deliberately frustrate official and departmental oversight by discouraging officers from reporting corrupt or unlawful acts of other police officers, and by retaliating against officers who report police misconduct (condoning pervasive constitutional violations and concomitant "Blue Wall of Silence" coverups of same)

f) wrongfully arresting persons observing, documenting, or commenting upon police actions in violation of the consent decree in *Black et al. v. Codd et al.*, United States District Court, Southern District of New York, 73 Civ. 5283 ("Consent Decree").

**278.** The Consent Decree states at 2 that: "[n]one of the following constitutes probable cause for the arrest or detention of an onlooker [to a police action] unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated: (a) Speech alone, even though crude and vulgar; (b) Requesting and making notes of shield numbers and names of officers; (c) Taking photographs; (d) Remaining in the vicinity of the stop or arrest."

**279.** This understanding memorialized in the Consent Decree is codified in the NYPD Patrol Guide at PG §208-03, subsection "Observers At The Scene of Police Incidents."

**280.** Despite due and repeated notice of the First Amendment rights of citizens in the vicinity of police actions, those same rights have been disregarded flagrantly and repeatedly throughout the course of Occupy Wall Street by members and ranking officers of the NYPD alike.

**281.** Officers of the NYPD took adverse action against the aforesaid Plaintiffs and other persons similarly situated in deliberate efforts to chill the First Amendment protected expression of persons observing, recording, and/or commenting upon police actions undertaken in the course of Occupy Wall Street.

**282.** The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the failure to screen, supervise, train, instruct and discipline Defendant NEW YORK CITY POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA and encouraging his misconduct, are further evidenced, *inter alia*, by the following civil rights actions in which he is a named defendant:

    a. **Posr v. Camejo**, 07-CV-07583 (KPC) (S.D.N.Y.) (Inspector Bologna alleged to have ordered unlawful arrest of persons

engaged in protected First Amendment activity);

b.  **Cohen v. City of New York**, 05-CV-06780 (RJS) (S.D.N.Y.) (Inspector Bologna participated in unlawful arrest of and swearing of false charges against Legal Observer during Critical Mass bicycle ride);

c.  **Black v. City of New York**, 05-CV-03616 (RJS) (S.D.N.Y.) (Inspector Bologna alleged to have ordered unlawful arrest of persons engaged in protected First Amendment activity);

d.  **Greenwald v. City of New York**, 05-CV-01566 (RJS) (S.D.N.Y.) (Inspector Bologna alleged to have executed unlawful mass arrest);

e.  **Kalra v. City of New York**, 05-CV-01563 (RJS) (S.D.N.Y.) (same);

f.  **Hershey-Wilson v. City of New York**, 05-CV-07026 (RJS) (S.D.N.Y.) (Inspector Bologna alleged to have ordered unlawful arrest of persons engaged in protected First Amendment activity);

g.  **MacNamara v. City of New York**, 04-CV-09216 (RJS) (S.D.N.Y.) (same); and

h.  **Burley v. City of New York**, 03-CV-00735 (WHP) (S.D.N.Y.) (Inspector Bologna alleged to have ordered and participated in unlawful arrest of class of persons engaged in protected First Amendment activity).

**283.** The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and Defendant CITY OF NEW YORK, including, without limitation, Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY and Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO.

**284.** The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread customs and practices of Defendant CITY OF NEW YORK, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and IAB, and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and

continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

**285.** As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual defendants, Plaintiffs' constitutional rights were violated.

**286.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages and damage to their reputations and standings within their communities.

**287.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM**
**THE MUNICIPAL DEFENDANTS' PROMULGATION OF**
**UNCONSTITUTIONAL ARREST QUOTAS UNDER 42 U.S.C. §1983**

———————————————————————————————

**288.** Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**289.** Plaintiffs also incorporate herein by reference the contents of the appendix attached hereto, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

**290.** Upon information and belief, the arrests of Plaintiffs were motivated in part by the Defendant "John Doe" POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

**291.** Upon information and belief, the unlawful arrests of Plaintiffs were undertaken by the Defendant "John Doe" POLICE OFFICERS due to said officers' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department, including but not limited to Defendant NEW YORK CITY POLICE CHIEF JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY.

**292.** The particular arrests of Plaintiffs are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

**293.** As a result of the aforementioned conduct of the Defendants, Plaintiffs' constitutional rights were violated.

**294.** As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to their reputations and standings within their communities.

**295.** As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:      New York, New York
            October 1, 2012

Respectfully submitted,

_____~//s//~_____
WYLIE M. STECKLOW [WS 6012]
STECKLOW COHEN & THOMPSON
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
WYLIE@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFF